[S. F. No. 16357. In Bank.—February 7, 1941.]

FRANK ABELLEIRA et al., Petitioners, v. THE DISTRICT
COURT OF APPEAL OF THE STATE OF CALIFOR-
NIA, THIRD APPELLATE DISTRICT et al., Respond-
ents; MATSON NAVIGATION COMPANY (a Corpora-
tion) et al., Interveners.

Gladstein, Grossman, Margolis & Sawyer, Richard Gladstein, Ben Margolis and George Olshausen for Petitioners.

Robert W. Kenny, as *Amicus Curiae*, on behalf of Petitioners.

Earl Warren, Attorney-General, and John J. Dailey, Deputy Attorney-General, for Respondents.

Maurice P. McCaffrey, Glenn V. Walls, Webster V. Clark, Rogers & Clark, Milton Marks, J. M. Mannon, Jr., Edwin S. Pillsbury, George O. Bahrs, and McCutchen, Olney, Mannon & Greene, as *Amici Curiae*, on behalf of Respondents.

Brobeck, Phleger & Harrison, Gregory A. Harrison and Richard H. Ernst for Interveners.

GIBSON, C. J.—Upon rehearing of this case, we adopt our prior opinion with certain minor modifications, as follows:

This is a petition for a writ of prohibition, to restrain the respondent District Court of Appeal from taking any steps toward the enforcement of a writ of mandate and temporary restraining order heretofore issued by that court and directed against the California Employment Commission. For convenience, the term "petitioners" will be used to refer to those who seek the writ of prohibition in the present proceeding; the term "respondent" will refer to the District Court of Appeal; and the term "employers" will be used to refer to those employers who sought and obtained the writ of mandate and restraining order from the District Court of Appeal, as well as to other employers represented by counsel participating in the argument as *amici curiae*.

Petitioners are individual longshoremen ordinarily employed in the harbor of San Francisco and numbering about five thousand persons. As such workmen they are subject to the provisions of the California Unemployment Insurance Act. (Stats. 1935, chap. 352, as amended; Deering's General Laws, Act 8780d; Deering's 1939 Supplement, p. 1697.) Under the act a percentage of their earnings is deducted and paid into the unemployment fund, and this money, together with contributions from employers, is used to pay benefits to unemployed workers. The act is administered by a board known as the California Employment Commission, with powers usual to such commissions, including authority to adopt rules and regulations. (Sec. 90.) The procedure established by the act as it read at the time of this controversy is as follows: Application is made by an unemployed workman and notice thereof is sent to the employer. An initial determination is made by the adjustment unit, which is the lower tribunal. Notice of this determination and its reasons is sent to the applicant and the employers. If payment is ordered, any employer whose reserve account is affected by the payment may intervene and appeal, and payment will be stayed pending said appeal. (Sec. 67.) A referee is appointed by the commission to hear the appeal, which is conducted in the manner usual to such commission hearings, full opportunity being accorded to produce evidence and examine wit-

nesses. (Secs. 67–71.) The referee makes written findings and a decision which, unless further appeal is taken, becomes final; but appeal lies to the commission. (Secs. 67, 68, 72.) This appeal is heard on the record and on any additional evidence produced; oral or written argument may be permitted; and the commission thereafter makes its findings of fact and decision. The commission may also transfer to itself proceedings on any claim pending before the referee, thus affording in some cases an opportunity to expedite a decision by the commission itself. (Sec. 72.) Section 67 contains a pro-. vision reading as follows: "If a referee affirms an initial determination allowing benefits, *such benefits shall be paid regardless of any appeal* which may thereafter be taken, but if such determination is finally reversed no employer's account shall be charged with benefits so paid as to each such determination so reversed." The importance of this provision will hereinafter appear.

During October and November, 1939, widespread unemployment occurred among petitioners. On or about November 10, 1939, they registered for work and made claim for unemployment benefits in accordance with the requirements of the statute. An initial determination was made by the adjustment unit that they were entitled to the benefits, and the employers, intervening, appealed from this determination. A hearing was had before a referee; considerable evidence was introduced and argument heard, following which written briefs were filed. On December 15, 1939, the referee made his decision affirming the initial determination.

On December 16, 1939, the employers applied to the District Court of Appeal, Third Appellate District, for a writ of mandate and other incidental relief, in a proceeding entitled *"Matson Navigation Company* v. *California Employment Commission"*. The employers objected to payment of the benefits on the ground that petitioners left work "because of a trade dispute", which, under section 56 of the act, disqualifies employees from receiving unemployment benefits. In their application for mandate the employers also alleged that they intend to and will appeal to the commission; that they have not further exhausted their remedies before the commission because the proposed payment of benefits would violate the act; that in prior decisions the commission has indicated its position against the employers on the issue raised

and would decide against them; and that the unemployment fund would be seriously damaged by the allegedly unlawful payments contemplated in this case.

The District Court of Appeal issued an alternative writ of mandate and a temporary restraining order directed to the commission to withhold payment of unemployment benefits. The writ states that "any such payments which may be made . . . are in violation of the provisions of the Unemployment Insurance Act", and orders the commission to refuse to pay as long as the asserted trade dispute is in progress, or to appear and show cause before the court why it has not done so. The restraining order was issued to enforce compliance with the mandate pending a final hearing on the alternative writ. The writ and restraining order having been issued *ex parte*, petitioners on December 18, 1939, made a motion to dissolve. The motion was argued, but the court submitted it without making any decision thereon at that time.

Subsequently, on December 22, 1939, the employers filed an appeal from the decision of the referee to the commission itself, which appeal is now pending.

On or about December 26, 1939, petitioners applied to this court for a writ of prohibition. On January 5, 1940, we issued an alternative writ. The matter was heard and is here on briefs of counsel, together with a number of additional briefs of *amici curiae* representing the commission, other employers and parties interested generally in the issues of the case.

The theory upon which the District Court of Appeal acted in issuing the writ of mandate clearly appears from the petition, the writ, and the briefs of counsel. The court, in ordering the commission to cease paying benefits, was undoubtedly of the belief that the commission was acting beyond its statutory powers, and consequently was without jurisdiction to make the payments in question. This is expressly asserted by certain *amici curiae* appearing for the employers.

The theory upon which the writ of prohibition was sought is that the District Court of Appeal had no jurisdiction to issue the writ of mandate prior to completion of the administrative proceedings, and that petitioners had no plain, speedy or adequate remedy otherwise. (See Code Civ. Proc., sec. 1103, and authorities discussed *infra*.)

It must be understood at the outset that the merits of the controversy between the original parties, involving the interpretation of the ''labor dispute'' proviso in the Unemployment Insurance Act, are not before us. The important question is not *what* should be the decision on that point, but rather *how* the decision should be made. In the normal course the commission would make it, and thereafter judicial review, if appropriate, might be sought by either employers or employees. (See *Bodinson Mfg. Co.* v. *California Employment Commission,* Sac. No. 5407, this day decided, *post,* p. 321 [109 Pac. (2d) 935].) The employers, in departing from this normal procedure, and asking for a judicial review before completion of the administrative proceeding, rely upon assumptions of fact not supported by any record in this court. They seek to justify their action by charging that the determination in favor of petitioners is in violation of the law. But there has not, as yet, been any such final determination by the commission. That body has power to review the evidence previously presented before the referee, and also to take new evidence and make new findings, approving or disapproving those of the referee. It has not yet determined the facts upon which the right to benefits depends, and until it does so, it is improper for a reviewing court to consider the claims on their merits. The issue actually before us does not concern the rights of petitioners or their employers, nor the scope of the Unemployment Insurance Act. These matters were properly before the court and were decided in the Bodinson Mfg. Co. case, *supra.* The question here is whether boards and commissions, charged with the administration of a statute, may carry on their administrative proceedings to completion before being subjected to judicial review. The importance of that issue can hardly be overestimated, since a curtailment of administrative jurisdiction usually means an enlargement of the duties of the courts in a field in which the courts traditionally are reluctant to enter.

1. *"Lack of jurisdiction"* *as a basis for writ of prohibition.*

The first inquiry in this case must, of course, be as to the nature and meaning of ''jurisdiction''; and here three possible sources of confusion must be eliminated.

First is the argument of the employers that the District Court of Appeal has general original jurisdiction to issue writs

of mandate. This is not disputed, nor is the power of the court to review a final decision of the commission in issue. Whether the commission's decision as to the payment of benefits is subject to any judicial review, or whether it can be reviewed by mandate, are questions beyond the scope of this proceeding. They are considered and decided in the Bodinson Mfg. Co. case, *supra*. The writ herein was issued before any final decision of the commission was rendered, and the question before us now is whether the court could properly interfere with the uncompleted administrative proceeding.

Second is the nature of a writ of prohibition, which never issues to restrain a lower tribunal from committing mere error in deciding a question properly before it. If the lower court has power to make a correct determination of a particular issue, it clearly has power to make an incorrect decision, subject only to appellate review and not to restraint by prohibition. Hence, in examining the authorities, we must conclude that in those situations in which a writ of prohibition was issued, the particular action restrained was one beyond the jurisdiction of the court to take.

Third is the question whether this court has power to restrain or otherwise control the action of the District Court of Appeal. There can no longer be any doubt on this point. The writ of prohibition is not confined in its operation to restraining trial courts from acting in original proceedings; it lies also to prevent a lower appellate court from reviewing on appeal a matter over which it has no jurisdiction. (*Shriver* v. *Superior Court,* 48 Cal. App. 576, 582 [192 Pac. 124]; *Commonwealth* v. *Yungblut,* 159 Ky. 87 [166 S. W. 808]; 50 C. J. 668, sec. 25.) This court has in fact issued prohibition directed against the District Court of Appeal in two comparatively recent cases. (*Fay* v. *District Court of Appeal,* 200 Cal. 522 [254 Pac. 896]; *People* v. *District Court of Appeal,* 193 Cal. 19 [222 Pac. 353]; see, also, *Stout* v. *Farwell,* 111 Cal. App. 31, 32 [295 Pac. 47].)

We now proceed to a consideration of the meaning of the term "jurisdiction" in its relation to the granting of a writ of prohibition. The term, used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition. At best it is possible to give the principal illustrations of the situations in which it may be applied, and then to consider

whether the present case falls within one of the classifications.

Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. (See generally, 14 Am. Jur. 363, sec. 160.) Familiar to all lawyers are such examples as these: A state court has no jurisdiction to determine title to land located outside its territorial borders, for the subject matter is entirely beyond its authority or power. (See *Taylor* v. *Taylor,* 192 Cal. 71 [218 Pac. 756, 51 A. L. R. 1074].) A court has no jurisdiction to adjudicate upon the marital status of persons when neither is domiciled within the state. (See Restatement, Conflict of Laws, sec. 111; *Ryder* v. *Ryder,* 2 Cal. App. (2d) 426 [37 Pac. (2d) 1069].) A court has no jurisdiction to render a personal judgment against one not personally served with process within its territorial borders, under the rule of *Pennoyer* v. *Neff,* 95 U. S. 714 [24 L. Ed. 565]. (See *Doherty & Co.* v. *Goodman,* 294 U. S. 623 [55 Sup. Ct. 553, 79 L. Ed. 1097], discussing modern exceptions to the rule.) A court has no jurisdiction to hear or determine a case where the type of proceeding or the amount in controversy is beyond the jurisdiction defined for that particular court by statute or constitutional provision. (See *Cambra* v. *Justice's Court,* 4 Cal. (2d) 445 [49 Pac. (2d) 1121].) Other examples of lack of jurisdiction in this fundamental sense will readily occur.

But in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations. For the purpose of determining the right to review by *certiorari,* restraint by prohibition, or dismissal of an action, a much broader meaning is recognized. Here it may be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites. Thus, a probate court, with jurisdiction of an estate, and therefore over the appointment of an administrator, nevertheless acts in excess of jurisdiction if it fails to follow the statutory provisions governing such appointment. (*Texas Co.* v. *Bank of America,* 5 Cal. (2d) 35, 39 [53 Pac. (2d) 127].) The superior court may have jurisdiction over a cause of action

and the parties to a suit for libel, but in the case of non-residents, a bond for costs is required by statute, and unless such bond is filed, it is without jurisdiction to proceed, and will be restrained by writ of prohibition. (*Shell Oil Co. v. Superior Court*, 2 Cal. App. (2d) 348 [37 Pac. (2d) 1078]; see, also, *Carter* v. *Superior Court*, 176 Cal. 752, 757 [169 Pac. 667].) A court with jurisdiction over a cause may hear and determine it and give judgment, but it cannot award costs in a situation not provided by statute. (*Michel* v. *Williams*, 13 Cal. App. (2d) 198 [56 Pac. (2d) 546].) The superior court may have jurisdiction over a particular cause, but a disqualified judge may not sit and hear it if objection to his qualifications is raised, and prohibition will lie to prevent him from trying it. (*Hall* v. *Superior Court*, 198 Cal. 373, 387 [245 Pac. 814].) Where an injunction is sought against enforcement of a public statute, the court, despite its general equitable powers, has no jurisdiction to issue it. (*Loftis* v. *Superior Court*, 25 Cal. App. (2d) 346, 352 [77 Pac. (2d) 491]; *Reclamation Dist.* v. *Superior Court*, 171 Cal. 672 [154 Pac. 845].) A court may have jurisdiction to grant a new trial after motion based upon proper statutory grounds, but has no jurisdiction to make the order unless the moving party has given his notice of intention within the prescribed statutory time. (See *Peters* v. *Anderson*, 113 Cal. App. 158 [298 Pac. 76].) The court has power under section 473 of the Code of Civil Procedure to set aside its judgment or order on motion where it was entered against a party through inadvertence, excusable neglect, or mistake; but that power is wholly lost at the end of the six months' period prescribed by statute. (*Estate of Hunter*, 99 Cal. App. 191, 196 [278 Pac. 485].) An appellate court may have power to hear and determine a particular case on appeal, but is without jurisdiction to do so unless the procedural step of notice of appeal within the prescribed statutory time is taken. (*Aregood* v. *Traeger*, 94 Cal. App. 227 [270 Pac. 1002].) And if the notice is given before judgment is actually rendered, the premature appeal will be dismissed (*Aspegren & Co.* v. *Sherman, Swan & Co.*, 199 Cal. 532 [250 Pac. 400]), or a lower appellate court may be prevented from hearing it by writ of prohibition. (*Shriver* v. *Superior Court*, 48 Cal. App. 576, 582 [192 Pac. 124].) After reversal of a judgment with directions to the lower court, it has jurisdiction to enter judgment,

but is limited by the directions of the appellate court and is without jurisdiction to permit amended pleadings to raise new issues; hence prohibition will lie to prevent it from retrying the case. (*Lial* v. *Superior Court,* 133 Cal. App. 31 [23 Pac. (2d) 795].) The same is true where the superior court, in an appeal from a justice's court on questions of law alone, attempts to try the cause *de novo.* (*Sour* v. *Superior Court,* 1 Cal. (2d) 542 [36 Pac. (2d) 373].)

On a number of occasions the courts of this state have recognized the conflicting senses in which the term "jurisdiction" is used, and have emphasized the point that in applications for prohibition or *certiorari,* the broader meaning is involved. In our own recent decision, *Rodman* v. *Superior Court,* 13 Cal. (2d) 262 [89 Pac. (2d) 109], we said: " . . . some confusion exists with reference to what constitutes an excess, and what constitutes an error, in the exercise of jurisdiction. However, it seems well settled (and there appears to be no case holding to the contrary) that when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction, and *certiorari* will lie to correct such excess." In *Spreckels S. Co.* v. *Industrial Accident Com.,* 186 Cal. 256, 260 [199 Pac. 8, 9], where the commission made an award larger than the statute authorized and *certiorari* was sought, the court said: "The difficulty arises from the different shades of meaning which the word 'jurisdiction' has. As sometimes used, it means simply authority over the subject matter or question presented. In this sense the commission undoubtedly had jurisdiction in this case, and its award was not without jurisdiction on its part. But the word is frequently used as meaning authority to do the particular thing done, or, putting it conversely, a want of jurisdiction frequently means a want of authority to exercise in a particular manner a power which the board or tribunal has, the doing of something in excess of the authority possessed." (See, also, *Weintraub* v. *Superior Court,* 91 Cal. App. 763, 769 [267 Pac. 733]; *State* v. *Reynolds,* 209 Mo. 161 [107 S. W. 487, 491, 123 Am. St. Rep. 468, 14 Ann. Cas. 198, 15 L. R. A. (N. S.) 963], reviewing authorities on prohibition and quoting from *Appo* v. *People,* 20 N. Y. 531: " . . . The writ lies to prevent the exercise of any unauthorized power in a case or proceeding of which

the subordinate tribunal has jurisdiction, no less than when the entire cause is without its jurisdiction.'')

■ The foregoing observations, while by no means a complete description of the term, nevertheless serve as a warning against a too restricted meaning. The concept of jurisdiction embraces a large number of ideas of similar character, some fundamental to the nature of any judicial system, some derived from the requirement of due process, some determined by the constitutional or statutory structure of a particular court, and some based upon mere procedural rules originally devised for convenience and efficiency, and by precedent made mandatory and jurisdictional. Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis,* are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on *certiorari.* And, as a practical matter, accuracy in definition is neither common nor necessary. Though confusion and uncertainty in statement are frequent, there is a surprising uniformity in the application of the doctrine by the courts, so that sound principles may be deduced from the established law by marshalling the cases and their holdings in this field.

2. *The requirement of exhaustion of administrative remedies.*

■ Lack of jurisdiction in the District Court of Appeal to issue its writ of mandate is clearly established when the foregoing principles are considered in connection with a settled doctrine of administrative law. The Unemployment Insurance Act, summarized above, contains a complete administrative procedure, with provision for one original determination and two appeals, fulfilling every requisite of due process of law. Until that administrative procedure has been invoked and completed, there is nothing that the District Court of Appeal or any other court may review; it cannot interfere in the intermediate stages of the proceeding. The employers have no standing to ask for judicial relief because they have not yet exhausted the remedies given them by the statute. They still have their appeal to the commission, which appeal has not yet been decided adversely to them, and prior to the

prosecution of this appeal they have no right to demand an extraordinary writ from a court.

 This is the doctrine of "exhaustion of administrative remedies." In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act. The authorities to this effect are so numerous that only the more important ones need be cited here as illustrations. (See *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41 [58 Sup. Ct. 459, 82 L. Ed. 638] [National Labor Relations Board]; *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210 [29 Sup. Ct. 67, 53 L. Ed. 150] [rate orders]; *Porter* v. *Investors Syndicate*, 286 U. S. 461, 468 [52 Sup. Ct. 617, 76 L. Ed. 1226] [investment commissioners and permit of investment company]; *United States* v. *Sing Tuck*, 194 U. S. 161 [24 Sup. Ct. 621, 48 L. Ed. 917] [immigration and the powers of the secretary of labor]; *Gorham Mfg. Co.* v. *State Tax Com.*, 266 U. S. 265 [45 Sup. Ct. 80, 69 L. Ed. 279] [tax board]; *Red River Broadcasting Co.* v. *Federal Communications Com.*, 98 Fed. (2d) 282, 284 [69 App. D. C. 1]; *Western Powder Mfg. Co.* v. *Interstate Coal Co.*, 5 Fed. Supp. 619, 621; *Hegeman Farms Corp.* v. *Baldwin*, 293 U. S. 163, 172 [55 Sup. Ct. 7, 79 L. Ed. 259] [liquor control board]; *United States Nav. Co.* v. *Cunard S. S. Co.*, 284 U. S. 474 [52 Sup. Ct. 247, 76 L. Ed. 408] [shipping board]; *De Pauw University* v. *Brunk*, 53 Fed. (2d) 647, 652; *Palermo L. & W. Co.* v. *Railroad Com.*, 227 Fed. 708; *Hammerstrom* v. *Toy Nat. Bank*, 81 Fed. (2d) 628 [tax board]; *American Bond etc. Co.* v. *United States*, 52 Fed. (2d) 318; *Monocacy Broadcasting Co.* v. *Prall*, 90 Fed. (2d) 421 [67 App. D. C. 176]; *Federal Trade Com.* v. *Claire Furnace Co.*, 274 U. S. 160, 174 [47 Sup. Ct. 553, 71 L. Ed. 978]; *St. Clair Borough* v. *Tamaqua etc. Ry. Co.*, 259 Pa. 462 [103 Atl. 287, 289, 5 A. L. R. 20]; *Corstvet* v. *Bank of Deerfield*, 220 Wis. 209 [263 N. W. 687, 697]; *Earl Carroll Realty Corp.* v. *New York Edison Co.*, 141 Misc. 266 [252 N. Y. Supp. 538, 543]; 48 Yale L. J. 981; 51 Harv. L. Rev. 1251; 35 Col. L. Rev. 230; 12 N. Y. Univ. L. Q. Rev. 393; 28 Mich. L. Rev. 637; 28 Cal. L. Rev. 129, 151, 154, 162.) The California cases have consistently applied this settled rule. (See *Teeter* v. *Los Angeles*, 209 Cal. 685 [290 Pac. 11]; *Collier & Wallis* v. *Astor*, 9 Cal. (2d) 202 [70 Pac. (2d) 171]; *San Joaquin*

*etc. Co.* v. *Stanislaus,* 155 Cal. 21, 27 [99 Pac. 365] ; *Dawson* v. *Los Angeles,* 15 Cal. (2d) 77 [98 Pac. (2d) 495].)

The rule itself is settled with scarcely any conflict. It is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis,* and binding upon all courts. We are here asked to sanction its violation, either on the ground that a valid exception to the rule is applicable, or that despite the uniformity with which the rule has been applied, it may be disregarded by lower tribunals without fear of prevention by the higher courts. This last point cannot be too strongly emphasized, for the rule will disappear unless this court is prepared to enforce it. To review such action of a lower court only on appeal or petition for hearing would permit interference with the administrative proceeding pending the appeal or hearing, with the effect of completely destroying the effectiveness of the administrative body. The writ of prohibition can alone operate surely and swiftly enough to prevent this unfortunate result; and only if we recognize that the rule is jurisdictional will it be uniformly enforced. Bearing in mind the analysis of jurisdiction which has heretofore been made, and examining the authorities dealing with the rule, we are necessarily led to the conclusion that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts.

In *Myers* v. *Bethlehem Shipbuilding Corp., supra,* an application was made to the federal district court to enjoin the National Labor Relations Board from holding a hearing, but the employer applicant did not comply with the board's procedure. The United States Supreme Court annulled a preliminary injunction despite the employer's contention that the board had no authority over it because it was engaged in interstate commerce. The court declared that to uphold the employer's contention would be in effect ''to substitute the district court for the board as the tribunal to hear and determine what Congress declared the board exclusively should hear and determine in the first instance''. The court then went on to say: ''The contention is at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. That rule has been repeatedly acted on in cases

where, as here, the contention is made that the administrative body lacked power over the subject matter.'' The opinion of the court exhaustively cites the controlling authorities, and a footnote points out that ''the rule is one of judicial administration—not merely a rule governing the exercise of discretion''.

In *United States* v. *Sing Tuck, supra,* petitioner alleged that he was a citizen seeking to return to the United States. An immigration inspector decided against his claim of citizenship, and he failed to follow the statutory provision for appeal to the secretary of labor, seeking instead a writ of *habeas corpus.* The court denied relief, declaring (p. 167) that the act ''points out a mode of procedure which must be followed before there can be a resort to the courts''. The opinion then states that even though it be contended that the administrative officers are acting without jurisdiction, ''it is one of the necessities of the administration of justice that even fundamental questions should be determined in an orderly way''.

In *Gorham Mfg. Co.* v. *State Tax Com., supra,* it was held that a suit against the New York Tax Commission to enjoin collection of a tax alleged to be invalid and levied under an unconstitutional statute was properly *dismissed* for failure of plaintiff to avail itself of the administrative remedy provided by the statute for revision and correction of the tax. The court said (p. 269) : ''A taxpayer who does not exhaust the remedies provided before an administrative board to secure the correct assessment of a tax, cannot thereafter be heard by a judicial tribunal to assert its invalidity.''

In *Red River Broadcasting Co.* v. *Federal Communications Com., supra,* a broadcasting company appealed to the courts from a decision of the commission granting a permit for the construction of another station. The appeal was *dismissed* on the ground that appellant had failed to exhaust its administrative remedies and hence could not invoke the jurisdiction of the courts. The opinion, citing numerous cases, states (p. 284) : ''It is a well settled rule of judicial administration that no one is entitled to judicial relief until he has exhausted all prescribed applicable, administrative remedies. Generally, the rule is stated as being conclusive of the rights of one who prematurely asks judicial review, without intima-

tion or suggestion that any judicial discretion is involved in its application."

In *Porter* v. *Investors Syndicate, supra,* it was said that "the legislative process remains incomplete" until the administrative remedy is exhausted.

In *Western Powder Mfg. Co.* v. *Interstate Coal Co., supra,* the court declared that it "has no jurisdiction of such controversies until the administrative remedies have been exhausted".

This court recently gave the rule its full force in *Collier & Wallis* v. *Astor, supra.* In that case the Private Employment Agency Law required that certain controversies be submitted to the labor commissioner subject to later appeal to the superior court. Plaintiff sued on a contract coming within the scope of the statute, and defendant objected that no determination by the commissioner had been made prior to commencement of the action. We sustained the objection, saying (p. 206): "The provision of section 19 of the Private Employment Agency law providing for a reference to the labor commissioner of controversies arising under said act for hearing and determination by such official, being a valid legislative enactment, any action brought in the Superior Court without first making said reference and securing said determination, is prematurely brought and cannot be maintained."

The mere filing of the appeal with the commission, after the mandate and stay order had issued, was not a fulfillment of the requirements of the rule. It was purely a formal step, not intended to have any substantial effect, for the commission was then under the restraint of the court's order, and unable to act upon the merits of the case. The courts have considered this type of evasion and have held that the rule of exhaustion of remedies is not complied with by the mere filing of an appeal; the remedies are not exhausted until the appeal is fully prosecuted. Consequently the filing of the appeal with the commission is no more a compliance with the rule than the participation in the original hearing before the Adjustment Unit, or the first appeal before the referee. (See *Southland Industries* v. *Federal Communications Com.,* 99 Fed. (2d) 117 [69 App. D. C. 82]; *Chicago etc. R. R. Co.* v. *Basham,* 249 U. S. 164, 167 [39 Sup. Ct. 213, 63 L. Ed. 534].) Thus, in *Southland Industries* v. *Federal Communications Com., supra,* where the petitioner applied to

the court while his petition for rehearing before the commission was pending and undecided, the court said: "Upon the filing of its appeal in this court—its petition for rehearing being then undisposed of—appellant occupied the anomalous position of asking the Commission for administrative relief, and at the same time asking the court for judicial relief from the anticipated decision of the Commission. See *Vincent* v. *Vincent,* 3 Mackey, 320, 322, 14 D. C. 320, 322; *Chicago Great Western R. Co.* v. *Basham,* 249 U. S. 164, 167, 39 Sup. Ct. 213, 63 L. Ed. 534; *Doyle* v. *District of Columbia,* 45 App. D. C. 90; *Burnet* v. *Lexington Ice & Coal Co.,* 4 Cir., 62 Fed. (2d) 906. 'Two courts cannot have jurisdiction in the same case at the same time.' (*Lasier* v. *Lasier,* 47 App. D. C. 80, 83; see *Andrews* v. *Virginian Ry. Co.,* 248 U. S. 272, 39 Sup. Ct. 101, 63 L. Ed. 236.) As appellant elected to petition for a rehearing, the Commission retained jurisdiction; and as it failed to act on the petition its decision has never become a final one from which an appeal could be taken. (See *Voorhees* v. [*John T.*] *Noye Mfg. Co.,* 151 U. S. 135, 14 Sup. Ct. 295, 38 L. Ed. 101; *Kingman & Co.* v. *Western Mfg. Co.,* 170 U. S. 675, 18 Sup. Ct. 786, 42 L. Ed. 1192; *Northern Pac. R. Co.* v. *Holmes,* 155 U. S. 137, 138, 15 Sup. Ct. 28, 39 L. Ed. 99; *Harrison* v. *Magoon,* 205 U. S. 501, 27 Sup. Ct. 577, 51 L. Ed. 900. Consequently, this court is without jurisdiction."

3. *The employers' assertion of irreparable injury.*

The employers seek to avoid the operation of the rule, however, by the contention that they would suffer irreparable injury if the administrative hearing were permitted to proceed and its orders made effective without judicial interference at this time. The cases they cite are those dealing with rate orders of regulatory commissions, where the administrative body imposes a confiscatory rate on a public utility. Continued operation of the business at the rate imposed pending the appeal may in some instances be so unprofitable as to amount to a destruction of the business, and therefore a taking of property without due process of law. The courts in these cases issue injunctions to stay the enforcement of the new rate until a final determination of its validity, in order to protect the constitutional rights of the petitioning utilities. In brief, these decisions establish the right to equitable relief to protect the property rights of a petitioner from irreparable

injury immediately threatened by a void administrative act. The soundness of this proposition cannot be questioned, but it has no relevancy here.

What injury do the employers show? They say that they will suffer in the event unauthorized payments are made to unemployed workers, because their accounts will be charged with such payments, and their reserve under section 39 of the act will be thereby decreased, with the ultimate result that they may in 1941 pay contributions at an increased rate. In examining this contention, we must remember just what the employers are trying to do. They are attempting to prevent payment of public funds in which they have no direct interest, by a body specially charged with the duty of making such payment. We held, in the Bodinson Mfg. Co. case, *supra*, that they are aggrieved parties entitled to demand judicial review. But the question here is not whether they are aggrieved to the extent necessary to gain standing on appeal or review. The question is whether the payment of benefits at this time constitutes such an immediate and irreparable injury as to warrant the drastic step of interfering with an uncompleted administrative proceeding, in defiance of an established rule of jurisdiction. To this question there are several decisive answers.

In the first place, their whole contention is purely speculative. The maximum contribution which they can be required to pay under the statute is 2.07 per cent. This cannot be increased, and the extent of their possible injury would therefore be the loss of a hoped for lower rate under the so-called merit rating provision of the statute. This provision enables employers with a favorable employment experience to obtain a slightly lower rate of contribution, when their account on the commission books shows an excess of contributions over benefits paid. (See secs. 39, 40, 41.) But the narrow range in which the contribution rate fluctuates can be affected by a variety of circumstances and by numerous instances of unemployment. It cannot be determined at the present time whether this particular order of payment would, in the light of all the occurrences of the past year and any other period involved, actually result in a changed rate. (See 88 Univ. Pa. L. Rev. 137, 142.)

Second, it is provided in section 67 of the act that in the event that any payments of benefits are found to be erroneous,

the particular employer's account shall not be charged with them. This being so, it is not clear how his contributions can be increased by the payments, since the factor determining the rate is made inapplicable in such event.

The third answer is more fundamental; the mandate contravenes the express provision of section 67 that "if a referee affirms an initial determination allowing benefits, such benefits shall be paid regardless of any appeal which may thereafter be taken . . . " This is one of the most significant statements in the act. In substance it provides that when the initial determination has been reviewed and approved by the intermediate appellate authority (the referee), no further delay in *payment* shall be permitted even though the issues may be still further considered in a subsequent appeal. It was designed to carry out the policy declared in section 1 of alleviating the evils of unemployment, as part of a national plan of social security in which federal and state legislation is coupled. (Sec. 2.) The very essence of the act is its provision for the prompt payment of benefits to those unemployed. (See 88 Univ. Pa. L. Rev. 137, 139.) Any substantial delay would defeat this purpose and would bring back the very evil sought to be avoided. The legislature, recognizing the importance on the one hand of avoiding improvident payments without due consideration of the right thereto, and the danger on the other hand of withholding the payments for long periods through the slow processes of appeal to the commission and perhaps eventually to the courts, took a middle course. It provided for a preliminary appeal or review of the first determination where payments were ordered. This appeal, ordinarily decided in a short period of time, carries with it a stay. But when this second decision has also been made in favor of the applicants, the benefits begin, with protection, as already noted, for the employer in the event of later reversal.

The proceeding instituted by the employers ignores this statutory objective, and attempts to do precisely what the statute forbids. Their position is that the challenge in a court of law of any of the numerous factual and legal determinations which the referee must make in any decision to pay benefits is sufficient cause for the statute to cease operating. They believe that to continue payments where the propriety thereof has not yet been settled by the courts is an invasion of their

legal rights. But in truth there is nothing unusual in the provision, which is in force in some thirty-six of the states. The legislature has concluded on the basis of normal experience that the large majority of the administrative orders will be proper, and that to permit these justifiable and necessary payments to be postponed for long periods would defeat the objectives of the act. The courts have upheld similar provisions in workmen's compensation acts, where the statutes required payments of compensation after stay orders of limited duration, despite the pendency of proceedings on appeal or review. In *Employers' Mutual Ins. Co.* v. *Industrial Com.*, 65 Colo. 283 [176 Pac. 314], an employer's insurance company sought to enjoin enforcement of a commission award until the court could pass upon the legal questions. This was denied, and on appeal the court said (p. 316): " . . . the judgment of the commission in favor of a claimant is *prima facie* evidence of his right to recover. Procedure under the act is summary in character in order to furnish immediate aid to injured employees, and a careful reading of the statute as a whole leads to the conclusion that it was the intention of the legislature that payment of these weekly allowances should not be stayed. Indeed, to hold that such payments can be enjoined pending judicial review would in effect practically nullify one of the prime objects and purposes of the law." And in *Bannister* v. *Shepherd,* 191 S. C. 165 [4 S. E. (2d) 7], the South Carolina Industrial Commission made an award of compensation, from which the insurance carrier gave notice of appeal to the Supreme Court, meanwhile refusing to make the payments ordered. The statute provided that an appeal from an award of the commission should operate as a *supersedeas* for thirty days only, and thereafter the employer should be required to make payments until the issue was finally determined. The insurance carrier contended that if it were forced to pay and ultimately obtained a reversal, there would be no way to recover the payments erroneously made, and therefore the statute violated its constitutional rights. The court called attention to the rule that there is no right to *supersedeas* pending an appeal except where expressly authorized by statute; pointed out that the legislative purpose was to prevent the long delays incident to an appeal by an insurance carrier seeking to escape payment; and observed further that the Workmen's Compensation Act "is a form of social legislation passed primarily for the benefit of the em-

ployee, and to prevent the burden of injured employees becoming charges upon society''. The opinion finally concludes: ''The legislature has in clear and convincing language provided that an appeal shall only act as a *supersedeas* for a period of thirty days, whether or not this was a wise decision . . . is not the province of this court to say.''

The foregoing cases demonstrate the weakness of the argument that because a commission may make an occasional error in ordering some payment out of a public or semi-public fund, the courts must have the power to stay any and all payments during the lengthy period of judicial review. The legislature has concluded that it is wiser to have a system of unemployment compensation operating with a possible small percentage of error, than to have a system not operating at all. The legislative power to make such provision is unquestioned; the statutory language cannot be misunderstood; and for the courts that is the end of the matter.

To these arguments the employers answer that the statute does not in terms apply to the present case. Their theory is that the term ''appeal'' in section 67 must be given a restricted interpretation, to refer only to an appeal to the commission, and that it therefore does not purport to prohibit a stay pending a review by a court. Parenthetically it may be pointed out that the employers have already appealed to the commission, and while that appeal is pending the order to cease payments violates the statute. But this inconsistency need hardly be stressed, for the entire argument begs the question. The issue is *whether there is a review proceeding properly pending in a court*. As we have already shown, the District Court of Appeal has no jurisdiction to take over the proceeding, unless some valid exception to the rule of exhaustion of remedies could be established; and the employers, by way of proving such an exception, assume the very point in issue, namely, the pendency of a valid proceeding before the District Court of Appeal to review the merits of the administrative determination. It is impossible to explain away section 67 by such reasoning as this.

4. *The assertion that appeal would be futile.*

One final argument of the employers to justify disregard of the administrative remedy may be noticed. They assert that the commission has already decided cases on similar facts against their present position, and therefore that an appeal in the instant case would be fruitless. This is, indeed, the slen-

der thread upon which their entire case hangs. But again their position is unsound in principle and unsupported by the better authorities, for it was early perceived that to countenance this view would break down the rule of exhaustion of remedies. In substance the contention is that if they learn upon hearsay or by analogy that the administrative board may take a certain action, the board may be ignored and its action treated as already taken. We should all be very much surprised, no doubt, to find such an assertion made in the judicial field. One might attempt, for example to bring an original suit in the Supreme Court on the theory that the local superior judge was possessed of a particular opinion opposed to the views of the plaintiff, but he would receive scant consideration. The whole argument rests upon an illogical and impractical basis, since it permits the party applying to the court to assert without any conclusive proof, and without any possibility of successful challenge, the outcome of an appeal which the administrative body has not even been permitted to decide. This argument, though successful in a few cases, has been rejected by the weight of authority. In *Gilchrist* v. *Interborough Rapid Transit Co.,* 279 U. S. 159, 209 [49 Sup. Ct. 282, 73 L. Ed. 652], the court said that orderly action could not be defeated ''by alleging an intent to deny the relief sought.'' And in *Red River Broadcasting Co.* v. *Federal Communications Com., supra,* the opinion states: ''Appellant seeks further to excuse its failure, affirmatively to seek administrative relief, by contending that, even if it had attempted to do so, its request would have been denied; consequently, that its attempt would have been a futile and useless gesture. We cannot assume that consequence. If under such circumstances relief had been sought and denied, then there would have been basis for appeal. . . . It cannot be heard to complain in this court that there was danger of refusal when it made no effort to do so.'' (See, also, *United States Nav. Co.* v. *Cunard S. S. Co.,* 284 U. S. 474, 488 [52 Sup. Ct. 247, 76 L. Ed. 408]; *United States* v. *Felt & Tarrant Mfg. Co.,* 283 U. S. 269, 272 [51 Sup. Ct. 376, 75 L. Ed. 1025].)

It should be observed also that this argument is completely answered by those cases which apply the rule of exhaustion of remedies to rehearings. Since the board has already made a decision, if the argument of futility of further application were sound, then surely this is the instance in which it would

be accepted. But it has been held that where the administrative procedure prescribes a rehearing, the rule of exhaustion of remedies will apply in order that the board may be given an opportunity to correct any errors that it may have made. (See *Palermo L. W. Co.* v. *Railroad Com., supra; Carlson* v. *Railroad Com.,* 216 Cal. 653, 655 [15 Pac. (2d) 859]; *Red River Broadcasting Co.* v. *Federal Communications Com., supra; McCardle* v. *Board of Commissioners,* 195 Ind. 281 [144 N. E. 877, 878].)

■ 5. *Jurisdiction to determine jurisdiction.*

The final contention is advanced that though all of the above conclusions may be entirely correct, and that in consequence the District Court of Appeal has no jurisdiction to hear and determine the merits of the case, nevertheless it has power *to hear and determine the question whether it has jurisdiction.* If by this statement it is meant that the court had jurisdiction to determine whether the employers had exhausted their remedies before the commission, the record itself is a conclusive answer. The employers have affirmatively alleged their failure to exhaust their remedies before the commission, and their entire argument is devoted to an attempt to excuse such failure. On this point there is no issue presented, but only an admitted fact. If, on the other hand, the statement means that the court had jurisdiction to determine whether it had jurisdiction of the merits of the cause, it is indeed a strange argument. Stated plainly, the proposition is that a court may temporarily interrupt any pending proceeding, administrative or judicial, and hold that proceeding in abeyance while it decides whether it had any power to interfere in the first place; *and during all this time it is immune from any restraint by a higher court.* If that is true as applied to this case, then there is no control over unauthorized, arbitrary assumptions of judicial power except the slow process of appeal or petition for hearing. We cannot, of course, lightly accept such a destructive doctrine, and it must be rejected unless compelled by the strongest logic and precedent. But upon careful study and examination of the authorities cited, we find neither.

The proposition, stated simply, is that a tribunal has jurisdiction to determine its own jurisdiction. This is a truism, and, subject to certain implicit limitations, is ordinarily a correct statement of law. It has its origin mainly in the cases holding that a court has inherent power to inquire

into jurisdiction of its own motion, regardless of whether the question is raised by the litigants. (See 15 C. J. 851, 852, secs. 170, 171; 14 Am. Jur. 368, sec. 168; *Morris* v. *Gilmer,* 129 U. S. 315, 325 [9 Sup. Ct. 289, 32 L. Ed. 690].) It rests also upon the theory that until the court determines that it has jurisdiction and does some act in consequence, there can be no injury to the party who denies its jurisdiction. (See *Noland* v. *Superior Court,* 26 Cal. App. (2d) 708 [80 Pac. (2d) 76].) It means only that the trial court or lower tribunal or body to which the question is submitted has such jurisdiction to make the first preliminary determination—not a final one; and no interference is permitted until it does decide the matter one way or the other. Until it acts to assume or refuse jurisdiction over the merits no one is entitled to complain.

But once the tribunal, judicial or administrative, has made this determination of the issue, and has acted to assume jurisdiction of the cause, the rule no longer has any meaning. *The jurisdiction to determine jurisdiction has been fully exercised* by a determination in favor of jurisdiction over the cause; the question is no longer of jurisdiction to *determine,* but of jurisdiction to *act.* And jurisdiction to act is always a subject of inquiry by a higher court. The cases cited by the employers declare well-established law and are in accord with this basic distinction. For example, in *Noland* v. *Superior Court, supra,* the superior court made an order to show cause in a custody proceeding. Petitioner appeared at the hearing and moved to dismiss the order for lack of jurisdiction. The motion was submitted, and while pending and undecided, petitioner sought a writ of prohibition from the District Court of Appeal. The writ was denied. *Chester* v. *Colby,* 52 Cal. 516, in which a demurrer raising the jurisdictional point was pending and undetermined, is to the same effect. In neither case had the lower court taken any action in the cause at the time prohibition was sought; it was simply considering whether or not it had jurisdiction to act.

The situation presented in the instant case is entirely different. If the District Court of Appeal, in response to the employers' application and petitioners' objection thereto, *had taken under consideration* the question *whether it had jurisdiction to issue the writ of mandate,* we would have no reason to interfere pending its determination thereof. But the District Court of Appeal did more than this; it acted. It did not

merely deliberate upon the question whether it should intervene in the administrative proceeding; it did intervene. The issuance of the writ of mandate with its stay was a positive assumption of jurisdiction, for it displaced the prior jurisdiction of the commission, and rendered that body powerless to proceed. To say that the District Court of Appeal, left alone, may ultimately reach the same conclusion as we do here, and therefore should not be restrained, is no longer an answer. The writ of prohibition is not refused nor held in abeyance because the lower tribunal may ultimately realize the error of its assumption of jurisdiction; it is granted at the time the act in excess of jurisdiction occurs. This very point was cogently stated by the court in *Kilburn* v. *Law*, 111 Cal. 237, 242 [43 Pac. 615] : "It is said that the objection that the complaint does not state a case of which the court has jurisdiction is in the nature of a demurrer, and that the superior court has jurisdiction to consider all such questions, and they cannot be made the ground for a writ of prohibition. *This point cuts too deep, and, if sustained so broadly, would deprive this court of all power to issue writs of prohibition in cases where a lower tribunal is exceeding its jurisdiction.*" And in *Brougham* v. *Oceanic Steam Nav. Co.*, 205 Fed. 857, 859, the court spoke in similar vein: "It is sometimes said that every court has jurisdiction to determine its own jurisdiction. This is partly true and partly untrue. A court must, as an incident to its general power to administer justice have authority to consider its own right to hear a cause. But the mere decision by a court that it has such right when it does not exist does not give it authority. A court by moving in a cause assumes authority, but the assumption does not confer it."

The controlling test of the correctness of the employers' theory must necessarily be found in its practical operation. We have already referred to the cases which correctly apply it during the court's deliberation, and up to the time it acts. If it goes further, as the employers contend, we should expect to find some suggestion to that effect in the authorities. But all the California cases dealing with this situation have reached exactly the opposite result. In each case a commission or administrative officer assumed jurisdiction of a cause, and a superior court thereafter sought to take jurisdiction of the same cause. Under the theory urged here, if the court had jurisdiction to determine its jurisdiction, no higher court could stop this interference by prohibition, and the question

whether the interference was proper would have to await an appeal. But in every instance the appellate court issued a writ of prohibition to restrain the lower court from interfering with the administrative proceeding.

This, in *Goodyear etc. Co.* v. *Hanby,* 111 Cal. App. 382 [295 Pac. 562], an employee received an award from the Industrial Accident Commission and later sued in the superior court to enforce compliance therewith. It was held that the cause was within the jurisdiction of the commission, that therefore the court had no jurisdiction, and that a writ of prohibition should issue to prevent the trial. In *Vallejo Bus Co.* v. *Superior Court,* 19 Cal. App. (2d) 201 [65 Pac. (2d) 86], the Railroad Commission made an order permitting a utility to sell stock. The superior court gave a preliminary injunction. It was held that the court acted beyond its jurisdiction in thus interfering with the commission by such restraining order, and a writ of prohibition was issued to prevent the court from doing so. In *Lee* v. *Superior Court,* 191 Cal. 46 [214 Pac. 972], the Industrial Accident Commission, in a proceeding involving a nonresident minor, appointed a guardian *ad litem* to handle the award. The probate court sought to appoint a guardian of the estate. It was held that the commission's prior jurisdiction could not be usurped by the probate court, and that prohibition should issue to prevent its interference. Finally, in the recent decision in *Evans* v. *Superior Court,* 14 Cal. (2d) 563 [96 Pac. (2d) 107], the lower court sought to interfere by injunction with an administrative proceeding commenced by the Building and Loan Commissioner. This court issued a writ of prohibition to prevent such interference, saying (p. 415): ''We believe that the trial court in the present case has acted and is acting in excess of its jurisdiction. . . . We have heretofore held that the statute authorizes the commissioner to appoint necessary assistants and it appears that the proceedings of the trial court are preventing the exercise of the authority thus conferred upon him.''

It thus appears that under established principles of legal procedure the District Court of Appeal was without jurisdiction to issue its writ of mandate, and that petitioners are entitled to a peremptory writ of prohibition. The employers' application was founded upon an asserted right to judicial interference with an administrative proceeding before it became final, and hence impliedly claimed a right to interfere in the middle or the beginning, or even before any such

proceeding was commenced. This attitude challenges judicial practices of long standing. The courts have repeatedly recognized the necessity of placing the numerous and complex problems arising under statutes of the type involved herein in the hands of expert bodies, familiar with the subject matter through long experience. They have pointed out that to permit the initial consideration of these matters by the courts would not only preclude the efficient operation of the acts, but would overwhelm the courts with cases of a technical, specialized character, and seriously impair their capacity to handle their normal work. (See *Myers* v. *Bethlehem Shipbuilding Corp., supra*; *United States* v. *Sing Tuck, supra*; *United States Nav. Co.* v. *Cunard S. S. Co., supra*; *Federal Communications Com.* v. *Pottsville Broadcasting Co.,* 309 U. S. 134 [60 Sup. Ct. 437, 440, 443, 84 L. Ed. 656] ; *Armstrong* v. *United States,* 16 Fed. (2d) 387, 389.) The observation of the United States Supreme Court in *Federal Communications Com.* v. *Pottsville Broadcasting Co., supra,* is a timely reminder: "It is always easy to conjure up extreme and even oppressive possibilities in the exercise of authority. But courts are not charged with general guardianship against all potential mischief in the complicated tasks of government." We can with safety and assurance follow the traditional policy of the courts in this respect, remaining ready to review any final improper action (see the Bodinson Mfg. Co. case, *supra*), but permitting the administrative body initially to decide its myriad problems unhindered.

Let a peremptory writ of prohibition issue restraining the respondent District Court of Appeal from taking any steps toward the enforcement of its writ of mandate and temporary restraining order heretofore issued and directed against the California Employment Commission.

Edmonds, J., Traynor, J., Peters, J., *pro tem.,* and Carter, J., concurred.

SHENK, J., Dissenting.—I dissent.

The majority opinion and decision, when considered in connection with the decisions filed concurrently herewith in *Gantner & Mattern Co.* v. *California Employment Com.* (Sac. No. 5406, commenced December 5, 1939) and in *Bodinson Manufacturing Co.* v. *California Employment Com.* (Sac. No. 5407, commenced December 5, 1939), demonstrates the in-

congruity of the results which flow from the decisions in this group of cases.

In the Gantner & Mattern Company case, the District Court of Appeal regularly assumed jurisdiction to determine the right of the petitioner to the relief sought. That court issued an alternative writ of *mandamus* pursuant to its constitutional power (Const., art. VI, sec. 4b) and to sections 1084 to 1097 of the Code of Civil Procedure. No proceeding was commenced in this court or elsewhere to prohibit the District Court of Appeal from exercising its constitutional and statutory power in that proceeding. That court heard the matter on the merits on the petition and the return to the alternative writ and denied the peremptory writ, with opinion, and on the ground that the petitioner therein had not exhausted its statutory remedy. In due course the cause, transferred to this court for hearing and determination, has been decided by the majority on the same record presented to the District Court of Appeal and likewise on the merits and with the same result. For the purposes of this dissenting opinion, it matters not whether the District Court of Appeal denied or granted the peremptory writ. The fact is that this court has recognized the power of the District Court of Appeal to render a decision in that proceeding on the merits, and to have that proceeding pursue its constitutional course to this court and, in turn, this court has disposed of the proceeding on its merits.

In the present proceeding in prohibition, it appears that on December 16, 1939, the Matson Navigation Company and others commenced a *mandamus* proceeding in the same District Court of Appeal, wherein that court likewise issued an alternative writ and was proceeding to hear and determine the matter on a return to that writ and on a set of facts raising the identical issues on the merits as were involved in the Gantner & Mattern Company case. Yet this court in the present proceeding halted the prompt determination of the Matson Navigation Company case and is now denying power in the District Court of Appeal to dispose of that case in like manner as this court has now disposed of the Gantner & Mattern Co. case.

Furthermore, in the Bodinson Mfg. Co. case, this day filed, this court by a ruling on the merits, and to the same effect as determined by the District Court of Appeal, has decided that the petitioner therein had exhausted the statutory reme-

dies and was entitled to an order of this court compelling the commission to deny the claims for benefits therein involved on the ground that the claimants were ineligible under the act to receive them.

Yet, in the present proceeding, this court has declared that the District Court of Appeal is without jurisdiction to decide whether the Matson Navigation Company had exhausted its statutory remedies and, if so, to decide whether the claimants for benefits in that proceeding were eligible to receive the same, or if not to deny the relief sought, as it had done in the Gantner & Mattern Co. case.

From the foregoing the conclusion is unavoidable that if the District Court of Appeal in the first instance and this court on transfer had jurisdiction to pass upon the merits of the Gantner & Mattern Co. case, as conclusively appears by the course taken in that case, then the District Court of Appeal had jurisdiction to decide, on identical issues, the Matson Navigation Co. case. On the other hand, if the District Court of Appeal had no jurisdiction in the Matson Navigation Co. case (as has been decided), then it would necessarily follow that this court has no such jurisdiction, the petitioners in the *mandamus* proceeding are without remedy in the courts, and the commission allowed to proceed without the restraint universally recognized to be necessary in the proper application of administrative law.

The sole question presented in the present proceeding in prohibition is whether the District Court of Appeal has the power to decide a certain controversy pending before it. That question here is not whether the employees affected are or are not entitled to unemployment benefits, but whether the petitioners in the *mandamus* proceeding pending before the District Court of Appeal have stated a case which that court has jurisdiction to entertain and determine. In my opinion, that court has that power and to deny it by the issuance of a peremptory writ of prohibition is to deny to parties interested the right to seek redress in our courts against threatened unlawful action on the part of a state administrative board.

The case presented to the District Court of Appeal is one calling for a judicial determination of the powers of the Board under the statute of its creation. Particularly in that proceeding the problem is whether on the admitted facts the legislative remedy of appeal to the commission from the decision of the referee is adequate and, if not, whether it is not

the legal duty of the California Employment Commission of its own motion, if need be, and contrary to its alleged intention, to set aside, pursuant to section 72 of the act, the decision of the referee affirming the initial determination allowing benefits, and in any event to disallow such benefits, and thus prevent the alleged illegal payments from the unemployment fund.

In the *mandamus* proceeding, the District Court of Appeal was called upon to decide two principal questions:

First, whether under the undisputed facts found by or under the authority of the commission, the claimants for payments from the unemployment fund were eligible to receive the benefits. Section 56 (a) of the act provides:

"An individual is not eligible for benefits for unemployment, and no such benefits shall be payable to him under any of the following conditions: (a) If he left his work because of a trade dispute and for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed."

It is contended in the *mandamus* proceeding that the claimants, petitioners here, are not eligible for benefits under the foregoing section and under the facts found by, as distinguished from the conclusions of, the commission's referee. The question of the legal duty of the commission under the law and the facts was there squarely presented for that court's determination. The claimants have taken the position that the decisions of the commission allowing and directing the payment of benefits are beyond judicial review. Indeed, on oral argument counsel for the commission expressed this view. It cannot be true that this is the attitude of the members of the commission, who are public officers acting as trustees of a public fund which now contains an enormous amount of money collected from the employers and employees of the state for a specific purpose, namely, for the relief of employees who have been subjected to involuntary unemployment and who are eligible under the law to receive benefits. If the commission persists in payment to those who are ineligible to receive benefits, as is alleged in the pending *mandamus* proceeding, approximately a half million dollars will be unlawfully paid out of a fund whose beneficial and lawful administration was mistakenly anticipated in the litigation which resulted in declaring the constitutionality of the act under which the

commission was created and is functioning. (*Gillum* v. *Johnson,* 7 Cal. (2d) 744 [62 Pac. (2d) 1037, 63 Pac. (2d) 810, 108 A. L. R. 595].)

To hold that a commission set up by a statute of this state with the highly important and responsible duties of the Employment Commission is not amenable to judicial process in the pending *mandamus* proceeding would be to constitute the commission an autocratic body whose functioning is uncontrolled by any consideration except its own whim and caprice. Such of course is not the law of this state, nor of any other jurisdiction, state or federal. In this state the District Court of Appeal has constitutional and statutory authority to direct public officers to perform their duties under the law. (Const., art. VI, sec. 4b; secs. 1084–1097, Code Civ. Proc.) That power is coextensive with the same power reposed in this court except that the decision of that court is subject to review by this court by appropriate order of transfer. It is contended that not only under section 56 (a) of this act are the petitioners herein ineligible to receive the claimed benefits, but that section 67 also prescribes that benefits shall be paid only to claimants who are eligible to receive them. To deny to the District Court of Appeal the right and power to decide whether the petitioners herein are or are not eligible under the statute and the admitted facts would be deliberately to shut our eyes to an alleged arbitrary, flagrant and unlawful assumption of power by the Employment Commission.

In my opinion there is not the slightest doubt that a justiciable controversy within its jurisdiction has been presented to the District Court of Appeal and that the issues there tendered present for determination also the question whether the petitioners before that court had exhausted their statutory remedies before the commission. This is the second principal question on the merits involved in the pending *mandamus* proceeding.

The majority opinion holds that the District Court of Appeal is without jurisdiction because the *mandamus* proceeding was prematurely brought in that the petitioners therein had not exhausted their remedies before the commission. It is noted that the Adjustment Unit of the Division of Unemployment Compensation in the department of the commission granted the application of the employees, petitioners herein, for the payment of benefits. Certain of their employers appealed from the determination of the Adjustment Unit under

section 67 of the act. The commission designated a referee to hear the appeal pursuant to section 69. On that appeal the referee found the facts. The petitioners in the District Court of Appeal claim that those facts showed conclusively and as a matter of law that the claimants were ineligible to receive the benefits. But the referee concluded that the claimants were eligible to receive benefits and affirmed the initial determination of the Adjustment Unit. Section 72 of the act provides:

"Any party to a decision by a referee may appeal to the Commission from such decision. The Commission may on its own motion affirm, modify, or set aside any decision of a referee on the basis of the evidence previously submitted in such case, or direct the taking of additional evidence . . . "

The majority say the District Court of Appeal has no jurisdiction in the *mandamus* proceeding because the petitioners had not taken and prosecuted to a final conclusion an appeal from the decision of the referee to the commission under section 72 of the act. Section 67 of the act provides for an appeal from an initial determination and then provides:

"If an appeal is duly filed benefits with respect to the period prior to the final decision on appeal shall be paid only after such decision, except as herein provided." Then follows the exception which is the crux of this phase of the present controversy. It reads: "If a referee affirms an initial determination allowing benefits, such benefits shall be paid regardless of any appeal which may thereafter be taken, but if such determination is finally reversed no employer's account shall be charged with benefits so paid as to each such determination so reversed."

The main opinion decides as a matter of law that an employer must take and pursue to conclusion this last appeal to the commission before he may seek redress from the courts, notwithstanding the presence of an immediately enforceable order for alleged illegal expenditures from the unemployment trust fund. It is clear to me that a *bona fide* controversy is presented in the *mandamus* proceeding on the question whether the remedy provided by the statute for an appeal to the commission is an adequate statutory remedy as required by law, inasmuch as the benefits must be immediately paid notwithstanding the pendency of such appeal. It is of course well established that when the legislative department has set up an administrative board to ascertain the facts and to take

action thereon and has provided in the statute for hearings, rehearings, appeals and other proceedings before the board prior to its final decision, an interested party must exhaust his administrative remedies before he may resort to the courts for a redress of his grievances. But it is equally well settled that the statutory remedies before the board must be both appropriate and adequate. (See *Myers* v. *Bethlehem Shipbuilding Corporation,* 303 U. S. 41 [58 Sup. Ct. 459, 82 L. Ed. 638] ; *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.,* 301 U. S. 1 [57 Sup. Ct. 615, 81 L. Ed. 893, 108 A. L. R. 1352.) To provide for an appeal to the commission from a decision of the referee would certainly appear to be appropriate. But whether the appeal to the commission provided for by this particular statute is adequate, under the circumstances presented to the District Court of Appeal, is a judicial question. The argument against the adequacy of the remedy provided by the final appeal to the commission is that since the benefits must be paid immediately upon affirmance by the referee and notwithstanding the pendency of such appeal to the commission from the order of affirmance, the subject matter of the court controversy, namely, the alleged illegality of the payments by reason of powers usurped by the commission expressly prohibited by the act, has evaporated and the question has become moot; that is, unless the court may intervene to prevent the alleged illegal payments from the trust fund, the express mandate of the statute will be violated and the unlawful action of the board placed beyond judicial scrutiny and control; that power reposed in an administrative board does not constitute it an autocratic body to the extent that it may, uncontrolled and with impunity, exercise its power contrary to the provisions of the act which created it; that it is well settled that ''whether the Commission applies the legislative standards validly set up, whether it acts within the authority conferred or goes beyond it, whether its proceedings satisfy the pertinent demands of due process, whether, in short, there is compliance with the legal requirements which fix the province of the Commission and govern its action, are appropriate questions for judicial decision.'' (*Federal Radio Com.* v. *Nelson Bros. etc. Co.,* 289 U. S. 266, 276 [53 Sup. Ct. 627, 77 L. Ed. 1166, 89 A. L. R. 406] ; *Federal Communications Com.* v. *The Pottsville Broadcasting Co.,* 309 U. S. 134 [60 Sup. Ct. 437, 440, 84 L. Ed. 656] ) ; that *prima facie* the petition for the writ of *mandamus* before the

District Court of Appeal presents a case of a threatened enforcement of an order on the part of the commission which will violate the express legislative mandate, which is a prerequisite to valid payments within the rule repeatedly announced by the Supreme Court of the United States; that the so-called remedy by appeal to the commission from the order of affirmance of the referee is just as inadequate and futile as would be a statutory right of appeal from a judgment for money where a stay pending appeal is expressly denied the appellant and with a further statutory mandate that notwithstanding the pendency of the appeal the money must be paid, and the judgment satisfied; that it is no valid answer to this argument that the statute provides that in the event the commission on appeal should reverse the order of the referee "No employer's account shall be charged with the benefits so paid", for the reason that the employer as a contributor to the trust fund has an additional interest in preserving the integrity of that fund as against illegal expenditure and dissipation thereof contrary to the express provisions of the act.

The foregoing arguments urged on behalf of the respondents are addressed to the merits of the controversy pending before the District Court of Appeal and are mentioned solely for the purpose of indicating that there is clearly a question of law presented to that court in a matter in which it has jurisdiction of both the parties and the subject matter under the Constitution and laws of this state.

The majority say that the provision for payment of benefits pending appeal, when an initial determination for payment has been affirmed by the referee, was designed to carry out the policy declared in section 1 of alleviating the evils of unemployment, as part of a legislative plan of social security. This may be true where the payments are to persons eligible to receive the same under the act. But where the fact of ineligibility is concededly established and payments are threatened to be made to persons expressly excluded by the provisions of the act, do the majority still mean to say that such payments will carry out the legislative plan? The majority also say that to permit these "justifiable and necessary" payments to be postponed for long periods would defeat the objectives of the act. Would it defeat the objectives of the act to halt payments of benefits expressly forbidden by the act? On the contrary, would it not defeat the objectives of

the act to permit payments of benefits expressly so forbidden? The legislature did not leave any question for determination to the referee or the commission when the facts unquestionably disclose ineligibility on the part of claimants to receive payment of benefits. The provisions of the act direct the commission and leave it no alternative.

Finally, the writ of prohibition should not issue if there is a ''plain, speedy, and adequate remedy in the ordinary course of law'' (sec. 1103, Code Civ. Proc.). The petitioners herein would have had such a remedy by petition to this court for a hearing after decision by the District Court of Appeal, if they had been dissatisfied with that decision. If the result in the *mandamus* proceeding had been the same in that court as in the Gantner & Mattern Co. case, as seems likely, it is fair to assume that the petitioners herein would not have been in a position to complain. In any event, if the *mandamus* proceeding had been allowed to take its usual course by decision in the District Court of Appeal and petition to this court, as the ''plain, speedy, and adequate remedy'' provided by the Constitution, the long drawn-out process of the present proceeding for over a year and the consequent uncertainty of jurisdiction of District Courts of Appeal resulting from the majority opinion would have been avoided.

Ward, J., *pro tem.*, concurred.