Jack D. ABRAHAM et al., Plaintiffs,

v.

Honorable A. P. VAN METER, District Judge, Oklahoma County, Oklahoma, Employment Security Commission, Bruton Wood, Dave Vandivier, Hugh Harrell, T. C. "Ted" Knoop, E. R. Burns, Tom Chesher and Mark Neumann, Defendants.

No. 37396.

Supreme Court of Oklahoma.

Nov. 7, 1956.

C. W. Schwoerke, and W. A. McWilliams, Oklahoma City, and Harry Clark, Kansas City, Mo., for plaintiffs.

Lytle, Johnston & Soule, Oklahoma City, for defendant, A. P. Van Meter.

Withington, Shirk, Nichols & Clifford, and Tom Watts, Oklahoma City, for amicus curiae, Robberson Steel Co., Capitol Steel & Iron Co., and Associated Industries of Oklahoma.

BLACKBIRD, Justice.

The correct determination of whether or not this court should assume jurisdiction and issue the writ herein sought, requires a determination of the constitutionality of a certain portion of the legislation originally enacted in 1936, and designated as the "Oklahoma Unemployment Compensation Law", and which, as later amended, has been given the official designation of "Oklahoma Employment Security Act", Tit. 40 O.S.1951 § 211 et seq.

One of the principal purposes of this body of legislation, which we will hereinafter refer to merely as the "Act", "Statute", or "Law" is to obtain for the individuals, to which it applies, compensation, on a weekly basis, for periods of their unemployment. To effectuate this purpose, it contains comprehensive and detailed provisions governing the payment of such monetary benefits from a special fund called the "unemployment compensation fund," under the administration of a body, appointed by the Governor, and known as the "Oklahoma Employment Security Commission", hereinafter referred to merely as the "Commission." Secs. 219, 220, Ibid.

Besides providing for the filing of claims for such benefits by individuals, the Act prescribes certain requirements for their eligibility, and a system, within the framework of the Act itself, by which eligibility shall be determined. Thus, Sec. 214 of said Act prescribes certain findings that the Commission must make before an unemployed person will be eligible for such benefits in respect to any week. One of these findings is that said person is not only able to work, but that he is "available for work". Subsec. (c), Ibid. Sec. 214, subsection (d) (1) provides that "No week shall be counted as a week of unemployment (for the purpose of said subsection); * * * (3) Unless the individual was eligible for benefits with respect thereto as provided in Sections 5 and 6" of the Act. The section 6, referred to, now appears as Section 215 of Title 40, supra. Said section prescribes certain circumstances under which an individual shall be disqualified for benefits. One of them, set forth in subsection (c) of said section, is the claimant's having "failed, without good cause, either to apply for or accept if offered, available, *suitable* work * * *." (Emphasis ours.) Paragraph (2) of said subsection (c) provides, among other things, that no work shall be deemed "suitable", nor benefits be denied any otherwise eligible person for refusing to accept new work:

"(A) If the position offered is vacant due directly to a strike, lockout, or other labor dispute; * * *."

According to said section, an individual may also be disqualified for benefits:

"(d) For any week with respect to which the Commission finds that his unemployment is due to a stoppage of work which exists at the factory, establishment or other premises at which he is or was last employed, because of a labor dispute; * * *."

The present controversy arises out of claims for unemployment benefits filed under the above-described Act by one Jack D. Abraham and 256 other former employees of the Aero Design & Engineering Company of Bethany, Oklahoma. Said claimants were members of the United Auto Workers Union and became unemployed as a result of a labor dispute which was later determined to have existed on November 29, 1955, and, as far as is revealed herein, still continues. As Section 216(c) (2) of the Act requires such proce-

dure for determination of issues concerned in claims involving the application of the above-quoted provisions of Sec. 215(d), supra, Section 6(d), when so directed by the Commission, the aforesaid claims were transmitted to an "Appeal Tribunal" for the purpose of determining whether claimants should be disqualified for benefits for the week beginning January 1, 1956, and following weeks, because of the labor dispute. After investigations and hearings, as prescribed in the Act, the Appeal Tribunal found that a stoppage of work resulted from the dispute until December 28, 1955, and (apparently) held that claimants were not disqualified for unemployment benefits after that date. Subsequently, claimants filed a petition for an additional finding of fact as to the extent, if any, of the curtailment of operations at the employer's three plants and, pursuant thereto, Referee Dwight K. Starr, as Appeal Tribunal, made a written "determination" in February, 1956, in which he found that the labor dispute, which existed November 29, 1955, ceased to exist on January 1, 1956; and that therefore there "was no longer a sound basis" for claimant's disqualification for benefits by reason of a work stoppage. Thereafter, a "further appeal" (prescribed by subsection (d), paragraphs (3–6), incl., of Section 216, supra) was taken to the Board of Review, which, upon consideration of the Commission's records, a transcript of the testimony taken before the Appeal Tribunal, additional testimony offered before said Board and briefs and argument of counsel, promulgated its decision on May 22, 1956. In its written opinion then filed in said matter, the Board modified the Appeal Tribunal's aforesaid determination, by concluding that the work stoppage ceased to exist on February 12, 1956 (instead of January 1st, as found by the Appeal Tribunal), and allowed benefits to claimants for and after that date.

Thereafter, the employer, Aero Design & Engineering Company, in view of its right under subsection (d), paragraph (7) of Section 216, supra, to have the Board's decision judicially reviewed, instituted an action in the District Court of Oklahoma County. In said action, docketed as said Court's Cause No. 138693, said plaintiff named as defendants, not only the aforesaid claimants, but also the Board of Review, and its members, and the Oklahoma Employment Security Commission, and its members. The petition filed in said court action prayed the court, among other things, not only to reverse the Board of Review's aforedescribed decision on the ground that claimants were (1) ineligible for benefits as being "unavailable for work" within the meaning of Section 214, supra, and (2) disqualified from receiving such benefits by reason of a "stoppage of work" within the meaning of Section 215(d), but it also prayed that the defendant, Oklahoma Employment Security Commission, its members, and its Executive Director and Chief of Benefits, be restrained and enjoined from disbursing any such benefits to the defendant claimants during the pendency of said action. Pursuant to said prayer, and before any hearing on the merits of said Cause No. 138693, one of the Judges of said district court entered an order in said cause, on May 23, 1956, temporarily restraining any and all disbursement of the aforedescribed monetary benefits. Thereafter, the claimant defendants filed a motion to dissolve said order and also a plea to said court's jurisdiction.

After the temporary order was supplanted by "Restraining Order Pendente Lite" entered in said cause on June 7, 1956, by the Honorable A. P. Van Meter, one of said district court's judges, said claimants, who appear herein as petitioners, filed this original action, alleging, among other things, that, in entering said order, Judge Van Meter and the court for which he was acting, assumed to exercise power not granted it by law and praying that we issue a writ commanding him to dissolve the aforesaid order in said Cause No. 138693, and that we also order the respondent, Oklahoma Employment Security Commission, to pay the unemployment benefits provided by "Oklahoma Statutes" and now being withheld from them under said

District Court's aforementioned restraining order.

Petitioners' position that by issuing the restraining order the respondent Judge has exceeded his legal authority is based upon subsec. (e) of Sec. 216, supra, which reads as follows:

"Payment of Benefits. Benefits shall be promptly paid on any claim in accordance with a determination or redetermination, unless a party files an appeal with an appeal tribunal as provided in this Section. *If pursuant to a determination or redetermination benefits are payable in any amount* as to which there is no dispute, or *with respect to unemployment following the maximum disqualification period that may be imposed because of an alleged factor surrounding the separation from work, such amount of benefits shall be promptly paid regardless of any appeal. The commencement of a proceeding for judicial review pursuant to Subsection (d) (7) of this Section shall not operate as a supersedeas or stay unless the Board of Review shall so order and the filing of a petition for judicial review by the Commission from a decision of the Board of Review which allowed benefits shall not authorize the Board or any court to direct the denial of any benefits which would have been payable under the Board of Review's decision.* If a determination allowing benefits is affirmed in any amount by an appeal tribunal, or is so affirmed by the Board of Review, or *if a decision of an appeal tribunal allowng benefits is affirmed in any amount by the Board of Review, such benefits shall be promptly paid regardless of any further appeal, and no injunction, supersedeas, stay, or other writ or process suspending the payment of such benefits shall be issued by* the Board or *any court* but if such decision is finally reversed no employer's account shall be charged with benefits as paid pursuant to the erroneous determination and benefits shall not be paid for any subsequent weeks of unemployment involved in such reversal." (Emphasis ours.)

In his response to the application herein, the respondent District Judge seeks to justify his issuance of the Restraining Order Pendente Lite (in contravention of the above-quoted Section 216(e) on the ground of the "apparent unconstitutionality" of its emphasized provisions (the latter portion of which is part of the so-called "double affirmation clause") in so far as they authorize "disbursement of unemployment benefits prior to a final determination that claimants are lawfully entitled" to receive them. He says said section is in contravention of the power granted district courts by art. VII, sec. 10, to grant restraining orders and injunctive relief, and that the disbursement thereby authorized "would deprive those contributing to, and having a property right in, the Unemployment Compensation Fund (,) of their property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States; and Article II, Section 7, of the Constitution of Oklahoma."

Robberson Steel Company, Capitol Steel & Iron Co., and Associated Industries of Oklahoma appear herein as amicus curiae with argument contemplated to support, and against disturbing, the respondent Court's action, and, with the claim, among others, that as employers and contributors to the Unemployment Compensation Fund, they have a property right in it, and an interest in seeing that it is used only for lawful purposes. In this connection they say the contribution rate of all employer-contributors to said Fund "is determined in a large measure by the State Experience Factor as set out in the Act, and in as much as this State Experience Factor is determined by the amount of benefit wages and benefit payments of all covered employees in the State, any increase in benefits paid to such employees will tend to increase the State Experience Factor and will therefore increase" their rate of contribution to the Unemployment Compensation Fund.

As we view the matter, it has not been demonstrated that the operation or enforce-

ment of the Act in question will have the effect of taking any property, without due process of law, from Aero Design & Engineering Company, or any former employer situated similarly to it, or, to those on whose behalf amicus curiae briefs have been filed. The only issues presented herein have been settled to our satisfaction by Abelleira v. District Court of Appeal, Third District, 17 Cal.2d 280, 109 P.2d 942, 132 A.L.R. 715. Despite the absence, pointed out in the response brief filed herein, of an expression regarding "due process" in Headnotes 13 and 14 of that opinion, it is said in Headnote 7 thereof, that the California "Unemployment Insurance Act", West's Ann.Cal. Unemploy.Ins.Code, § 1 et seq., which corresponds to the Oklahoma Unemployment Security Act herein dealt with, "fulfills every requisite of 'due process of law'." That statement is repeated almost verbatim in the body of the opinion. While, as pointed out in the aforementioned respondent's brief, *employees* (as well as employers) do not contribute to the Oklahoma unemployment benefits fund, we perceive in this circumstance, no material distinction between this case and the cited one, or any valid reason why the logic and principles therein expressed and applied concerning the only issues here presented, should not apply with equal force here. We do not think this difference renders the Oklahoma Unemployment Fund any less a "public" or "semipublic" fund than the California unemployment fund, was regarded in that case. There the court, among other things, said:

"'The foregoing cases demonstrate the weakness of the argument that because a commission may make an occasional error in ordering some payment out of a public or semipublic fund, the courts must have the power to stay any and all payments during the lengthy period of judicial review. The legislature has concluded that it is wiser to have a system of unemployment compensation operating with a possible small percentage of error, than to have a system not operating at all. The

legislative power to make such provision is unquestioned; the statutory language cannot be misunderstood; and for the courts that is the end of the matter.'"

Another distinction that readily appears between the two cases is that in the California case there had been only one "affirmation" of the initial determination, instead of the "double affirmation" with an appeal before the Commission or Board of Review already concluded, as is the case here. There is some dispute in the briefs as to whether there has ever been a double administrative affirmation in the present case, and there are recitals in the Board of Review's opinion, supra, representing that the question of "eligibility" therein determined (and sought by respondent to be distinguished from the question of "disqualification") had not previously been decided. However, as hereinbefore quoted, Section 216(e) provides in part:

"* * * If pursuant to a determination or redetermination benefits are payable in any amount * * * with respect to unemployment following the maximum disqualification period that may be imposed because of an alleged factor surrounding the separation from work, such amount of benefits shall be promptly paid regardless of any appeal." (Emphasis ours.)

We think that for the purpose of determining whether or not "last" employers, and/or employer-contributors generally, are deprived of due process of law by payment of initial benefits to claimants prior to the conclusion of a judicial review, the question of whether or not there has been a *double* administrative affirmation is unimportant. As we see it, the only significance that such a matter might have would be in determining the question of whether or not the administrative remedy has been exhausted— a question of fact which is not directly involved in the broader issues here presented.

Respondent has supplemented his brief with a recent opinion by the Supreme Court

of Pennsylvania in the case of Pennsylvania State Chamber of Commerce v. Torquato, 125 A.2d 755, which adopts excerpts from, and affirms, an earlier opinion in the same case, promulgated by the Court of Common Pleas of that State's Dauphin County. In the cited case, it was said:

"The Westinghouse Electric Corporation is a proper party plaintiff, not only as a contributor, to the Unemployment Compensation Fund and therefore a taxpayer: * * * [citing cases]; but also because *its own reserve account will be charged with the payment of any unemployment benefits that are made and its present contribution rate thereby jeopardized.*" (Emphasis ours.) [125 A.2d 759]

It is not demonstrated herein that the above-emphasized statement of the court concerning Westinghouse Electric Corporation, under the Pennsylvania unemployment benefit law, is true of Aero Design & Engineering Company, and other contributors to our unemployment insurance fund, under the Oklahoma law. The Act here involved has substantially the same provision, Section 216(e), referred to in the California law by the court in the Abelleira case, supra, when, in the course of its discussion of the question of whether or not an employer is deprived of any property by payment to claimants of initial benefits pending a judicial review, it said 109 P.2d at page 952:

" '* * * it is provided in section 67 of the act that in the event that any payments of benefits are found to be erroneous the particular employer's account shall not be charged with them. This being so, it is not clear how his contributions can be increased by the payments, since *the factors determining the rate is made inapplicable in such event.*" (Emphasis ours.)

Nor can it be said that, under the Oklahoma Act, the unemployment insurance fund itself will suffer any *ultimate* loss or depletion, indiscriminately, or in *all* cases, by reason of the payments herein complained of, for Section 216(f) provides for "Recovery and Recoupment" within the "discretion of the Commission" and upon certain considerations referred to therein. This appears to be another distinction between the present case and the Pennsylvania case, for there the court said it was both "apparent" and "conceded" that if unemployment payments were made to the claimant they would *never* be recovered and the unemployment insurance fund would be depleted to the extent thereof. The court, 125 A.2d 765, opined that, under the circumstances, the threatened payment was "likely to produce irreparable harm unless a supersedeas or injunction" was granted.

In State ex rel. Aikens v. Davis, 131 W. Va. 40, 45 S.E.2d 486, 488, the court had before it the provision of the West Virginia Law requiring payment of the benefits allowed by the decision of the Board of Review regardless of any further appeal. The court there regarded the question of whether or not said provision was confiscatory, as having been fully answered in the Abelleira case, supra. There, however, the court said: "That case has since been modified and it is not cited as authority save to the extent that we regard sound reasoning as controlling." We are aware of no modification in the Abelleira case which affects the questions presented in this case. It is true that after the decision of the California Supreme Court in that case, the District Court of Appeal of that State's First District in American-Hawaiian S. S. Co. v. California E. Commission, 128 P. 2d 627, 632, issued a writ of "mandate" to require that State's Employment Commission not only to vacate its order for the payment of unemployment benefits, but to require it to refrain from charging the accounts of the involved employers with such payments. But in the latter case, it was alleged that all of such payments were in *violation of the plain terms of the California Unemployment Act.* Here, as in State v. Davis, supra, it has not yet been clearly shown that plaintiffs in Cause No. 138693 were attacking the Board of Re-

view's previous decision as being "arbitrary, capricious, or fraudulent * * *." In this connection, the petition filed in said cause merely alleges that there had been no "double affirmation", and prayed for a judicial review on the two grounds pertaining to eligibility and disqualification hereinbefore indicated, plus the additional ground that the board had erred in "refusing to permit plaintiff to present evidence on eligibility." Besides reversal on the first two grounds mentioned, the plaintiff prayed in the alternative that the Board's decision be vacated on said third ground, and that the cause be remanded to said Board for the taking of additional evidence "on the question of claimants' eligibility under Tit. 40 O.S.1951 § 214." The Board's opinion, which is the only record of its proceedings included in the documents filed herein, does not affirmatively show a refusal by it "to permit plaintiff to present evidence * * *". Furthermore, sec. 216(d) (7), authorizes the court in the "Judicial Review", there prescribed, to order additional evidence taken before the Board, expressly contemplates that the Board's previous findings and conclusions may be modified upon hearing such evidence, and provides that the additional findings and conclusions, together with a transcript of the additional evidence, may then be filed in the court action. If Aero Design & Engineering Company's allegations, in its petition in Cause No. 138693, are of errors of the Board of such nature as could be cured by taking of additional evidence, it is quite conceivable that same could be resolved to its satisfaction merely by the Court's granting of the alternative relief prayed for. The court action could then be dismissed upon its motion without any other order or judgment. Still, said company would have no right, under the Act, to prevent payment of initial benefits pending the court-directed rehearing before the Board of Review.

In view of the features of the Oklahoma Employment Security Act herein referred to, we do not agree with the views that the Michigan Supreme Court voiced regarding the allegedly unconstitutional aspects of that State's unemployment insurance law in Chrysler Corp. v. Appeal Bd. of Mich. U. C. Comm., 301 Mich. 351, 3 N.W.2d 302, and Chrysler Corp. v. Smith, 297 Mich. 438, 298 N.W. 87, 135 A.L.R. 900. Nor do we think that the provision herein questioned, when these features are considered in connection with it, necessarily operates to permit our State's unemployment insurance fund to be used for purposes never contemplated by said Act, as was said in State ex rel. Campbell v. State, 223 Ind. 59, 57 N.E.2d 433, of such a provision in the Indiana Act. At least it has not been shown to so operate in this case. On the basis of the pleadings, record and undisputed evidence, or facts, before us, we think it clear that the reasoning of the court in the Abelleira case, hereinbefore referred to, together with the other considerations herein noted, decisively show that Aero Design & Engineering Company, the plaintiff in Cause No. 138693, failed in said cause to make a sufficient demonstration of its entitlement to the restraining order issued by the respondent Judge therein, upon the ground that section 216(e), supra, deprives said company of property without due process of law. We hold that, as the matter is presented herein, said section does not have that effect upon said company, or any of the other parties appearing herein. We further hold that said portion of the law is not an unconstitutional exercise of legislative power in limitation or curtailment of the power previously vested in our district courts by art. VII, sec. 10, Oklahoma Constitution, to issue restraining orders and grant other relief of an injunctive character prescribed therein.

Accordingly, petitioner's application to this Court to assume jurisdiction and issue a writ to the respondent Judge is hereby granted to the extent of directing the District Court Within And For Oklahoma County, State Of Oklahoma, and said Respondent as a judge thereof, to vacate the Restraining Order Pendente Lite, and

desist from any further effort to prevent payment by the Oklahoma Employment Security Commission of the initial benefits to which, under the decision of said Commission's Board of Review, Jack Abraham and the other 256 employees of Aero Design & Engineering Company, are entitled.

JOHNSON, C. J., and WELCH, HALLEY, JACKSON and CARLILE, JJ., concur.

WILLIAMS, V. C. J., and CORN, J., dissent.